Saxton *v.* Dodge.

[MONROE GENERAL TERM, March 7, 1870. *Johnson*, P. J., and *J. C. Smith*, and *Dwight*, Justices.]

————•◦•————

JAMES A. SAXTON *vs.* JOHN A. DODGE and others.

As to the payee of a note, no notice of the want or failure of the consideration is necessary to constitute it a defense.

Where several payees of a promissory note unite in indorsing the same to one of their number, the latter acquires the interest only of his associate payees, in the note, and is not entitled to protection as a purchaser for value.

And if, in an action brought by him upon the note, the answer sets up a total want of consideration for the note, in matter and manner sufficient to defeat the action, had it been brought in the name of the payees, it is not necessary to allege notice to, or knowledge in, the plaintiff, of the entire worthlessness of the consideration.

Where all the other joint payees of a note transfer their interest to one of their number, and the action is brought by him, he stands upon the same footing, in respect to notice, that he did before. It is not in the power of several joint payees of a note to escape a just defense to it by such a .contrivance.

If the payee of a note indorses it to himself, he does not in any respect change his position. An action upon it may be defended, as against him, upon the same principle after the indorsement as before.

He does not stand upon the footing of a *bona fide* indorsee and holder in the usual course of business, the same as though he had not been one of the original payees.

Parties claiming to have a patent, which gave them the exclusive right to make and vend certain reapers and mowers, gave a license to the defendants to make and vend such reapers and mowers, and also to sell territory, for a

Saxton *v.* Dodge.

specified consideration, called license fees, which the defendants agreed to pay. They subsequently gave a note for those fees. In an action brought thereon, by an indorsee, the defense was that the patent was void and conferred no exclusive right whatever, upon the payees of the note, and that there was therefore a want of consideration therefor.

*Held,* 1. That so far as the question of estoppel was concerned, the case stood upon the same footing as it would have done had the action been to recover the license fees.

2. That the defendants might set up a want of consideration for the note, as a defense to the action.

Where a party gets nothing by the contract sought to be enforced against him—neither title nor possession of property—he is not estopped from setting up his defense.

An estoppel cannot be predicated upon a *nudum pactum.*

If the whole arrangement for the sale and purchase of a patent is *nudum pactum,* a stipulation that the purchasers shall not dispute the vendor's right and title, and will not set up any defense against the validity of the patent, in any action against them to enforce their promises, is as void as any other part, and cannot estop.

In an action upon a promissory note given for the purchase money of a patent right, where the defense is a total want of consideration, the inquiry into the validity of the patent, or of the license to sell under it, comes in collaterally only by way of evidence. In such a case this court may inquire into the validity of the patent as well as anything else, for the purpose of determining the question of consideration.

The true test, in all such cases, is whether the judgment upon the issue, allowing the court to have jurisdiction, would affect or determine the right claimed under the patent.

An answer, in such an action, alleging, generally, that the plaintiff made false representations knowing them to be so, but not alleging that the defendants relied upon such statements, and entered into the contract supposing and believing them to be true, does not state facts sufficient to constitute the defense of fraud.

A PPEAL by the defendants, from an order made at a special term, directing judgment for the plaintiff upon demurrer to the second, third and fourth counts or defenses of the answer of the defendants, upon the ground of insufficiency, in not stating facts sufficient to constitute a defense.

The complaint alleged that the defendants being copartners, doing business in the city of Auburn, under the

name, style or firm of "Dodge, Stevenson & Co.," by
their said firm name, on or about the 11th day of Decem-
ber, 1865, made, executed and delivered to Ball, Raff &
Saxton, their certain promissory note in writing for the
payment of money only, of which the following is a copy,
to wit:

$1.70  "$3361.68.          Auburn, N. Y., Dec. 11th, 1865.
Int. Rev.

stamp,          On the 8th August after date, we promise to
canceled.
pay to the order of Ball, Raff & Saxton, thirty-three hun-
dred, sixty-one and 68-100 dollars, at Cayuga County Na-
tional Bank, Auburn, value received, with exchange not
to exceed $\frac{1}{2}$ per cent.

(Signed,)          DODGE, STEVENSON & Co."

And that the payees thereof thereupon, and before the
maturity thereof, duly indorsed, assigned and transferred
the same to the plaintiff, whereby he became, and was and
still is, the lawful holder and owner thereof, and the said
note, when it became due, was duly presented where the
same is payable, for payment, and payment thereof de-
manded, which was refused, and the same was thereupon
duly protested for non-payment, and due notice thereof
given, but that said note remains wholly unpaid, and there
still is due and owing thereon from the said defendants to
the plaintiff, the said sum of $3361.68, together with in-
terest thereon from the said 8th day of August, 1866,
together with $1.52 notary fees and expenses necessarily
incurred by said plaintiff.

And for a second and further cause of action the plain-
tiff further alleged, that the defendants, so being copart-
ners as aforesaid, did on or about the 14th day of March,
1866, by their said firm name of "Dodge, Stevenson &
Co.," make, execute and deliver to the said Ball, Raff &
Saxton, their certain other promissory note in writing, for
the payment of money only, of which the following is a
copy, to wit:

Saxton *v.* Dodge.

$2.15 Int. Rev. stamp, canceled. "4226.69.    Auburn, N. Y., March 14, 1866.
On the 13th September after date, we promise to pay to the order of Ball, Raff & Saxton, forty-two hundred twenty-six and 75-100 dollars, at Cayuga County National Bank, Auburn, value received, with exchange not to exceed ½ per cent.

(Signed,)    DODGE, STEVENSON & Co."

And that the said payees thereupon, and before the maturity thereof, duly indorsed, assigned and transferred the same to the plaintiff, whereby he became, and was and still is, the lawful holder and owner thereof. Presentment, non-payment, protest and notice of this note were also alleged, and judgment was demanded for $7588.37, and interest thereon, on $3361.68 parcel thereof from the 8th day of August, 1866, and on $4226.69, other portion thereof, from the 13th day of September, 1866, with $3.10 notary's fees, and the costs and disbursements of this action.

The defendants by their answer admitted the execution by them of the notes sued upon. For a first defense, the defendants denied, on information and belief, that the said notes, or either of them, were indorsed, assigned or transferred by the payees thereof, Ball, Raff & Saxton, or by any one authorized on their behalf, at any time, to the plaintiff; and they denied that he was, as alleged, the owner thereof, and represented and averred, on the contrary, that the said notes were the property of the payees named therein, and that whatever rights and obligations, if any, existed by reason of the execution of said notes, were due from the defendants to said Ball, Raff & Saxton, and not to Saxton, as stated in his complaint.

And for a separate, further and second defense to the complaint, the defendants stated, on information and belief, that prior to the 23d day of October, 1862, one of the payees named in said notes, viz., Ephraim Ball, had been,

as had other parties, engaged in the manufacture and sale of reaping and mowing machines, the essential and prominent features of which were as follows, to wit: A main frame supported by two independent driving wheels, a hinged cutting apparatus, so connected with the main frame as to be capable of rising and falling with the undulations of the ground when in motion; certain combinations of gearing by which, when the machine was, propelled, this cutting apparatus was actuated; a brace or drag bar fastened by bolts to the inner part of the finger beam or cutting apparatus, and extending therefrom upon an inclination to the front part of the machine, to which it was attached by a flexible connection, and a brace extending from the rear of the machine to the cutting apparatus, to which it was attached by a flexible joint; the hinged finger beam being so connected, that is, by joints of such character, as to admit of its being raised and lowered independently of the raising and lowering of the main frame, and also so that no part of it projected in the rear of the main frame, nor any part of the main frame in the rear of the finger beam or cutting apparatus, and a rigid tongue. That to these machines, so built by the said Ball, he had given the names, according to size, of Ball's Ohio Mower and Reaper, and the Ohio Mower, Jr. That prior to said 23d day of October, 1862, the said Ball, Raff & Saxton had expressed their desire that the defendants should engage in the manufacture and sale of reaping machines, to be constructed and named as above, and should take from them a license for the use therein of certain patents which they claimed to own, either as inventors or assignees, which they alleged fully protected and covered the several essential parts of said machines herein before designated. That the plaintiff, James A. Saxton, acting for said Ball and Raff, as well as for himself, in such behalf, prior to the execution of the license hereinafter set forth, and at the time of its execution, represented to

these defendants that letters patent, as follows, were issued by the United States, covering certain improvements described therein, and embodied in said Ohio Reaper and Mower and the Ohio Mower, Jr., to wit:

Letters Patent to E. Ball,  . . . August 12, 1856.
"     "     "     "     . . . October 18, 1859.
"     "     "     "     . . . March 20, 1860.
"     "     "     "     . . . May 20, 1860.
Letters Pat. to John Butter & E. Ball, December 1, 1857.
Re-issued,  . . . . . . . . . Sept. 27, 1859.
     "         . . . . . . . . . July 17, 1860.
Letters Patent to J. A. Saxton, . . Nov. 15, 1859.

And that said letters patent, and each of them, were valid and subsisting patents, and were owned by said Ball, Raff & Saxton, and that they fully protected and covered the several essential parts of said machines, as herein before set forth.

And the defendants stated that they, relying upon the said representations, and believing that they would be protected in the exclusive manufacture and sale of reaping and mowing machines combining the features herein before enumerated and specified, within certain territory hereinafter named, did consent to accept a license from said Ball, Raff & Saxton, and to engage in the manufacture of reaping and mowing machines of the description as aforesaid. That thereupon the said Ball, Raff & Saxton, by and through the said James A. Saxton, as their agent and attorney in fact, did, on the said 23d day of October, 1862, execute and deliver to them a certain license in writing, the said license granting, or assuming to grant, to these defendants certain rights and privileges, in the words following, to wit: "For the consideration and upon the terms and conditions hereinafter mentioned, J. A. Saxton, for himself and as attorney for Ephraim Ball and Daniel Raff, all of Canton, Ohio, hath and by these pres-

sents doth license and confer on Messrs. Dodge, Stevenson & Co. the exclusive right and privilege of making, using and vending to others to be used, such of the improvements in mowing and reaping machines, specified in letters patent issued to E. Ball, on the 12th day of August, 1856, the 18th of October, 1859, the 20th day of March, 1860, and the 20th day of May, 1860; also to E. Ball and John Butter, on the 1st day of December, 1857, and reissued to E. Ball on the 27th day of September 1859, and again July 17th, 1860, entitled reissues numbered from 1007 to 1013, both inclusive; also, in a patent issued to J. A. Saxton on the 15th day of November, 1859, and any other patents that we own or control, or may hereafter obtain, as combined in the machine known as Ball's Ohio Mower and Reaper, and the Ohio Mower, Jr., until the expiration of the aforesaid patents, unless annulled before that time, as hereinafter specified, within the States of New York, Wiconsin, except Grant Co., Minnesota, Delaware and the counties of McKeon, Forest, Clarion, Jefferson, Clearfield, Centre, Union, Snyder, Northumberland, Schuylkill, Warren, Carbon, Luzerne, Susquehanna, and the counties north of them in the State of Pennsylvania, with the privilege of selling into exclusively the counties of Cumberland, Perry, Juniatta and those east of the Susequhanna river and south of those above named in the State of Pennsylvania, in common with the parties now manufacturing the said machines in that part of the State. Also, the exclusive right of selling in the State of New Jersey, in common with Messrs. Reese, Melick & Co. of Phillipsburgh. Also the exclusive right to sell in Washtenaw county, Michigan. Also to sell into any other territory in the United States not otherwise specially provided for, until other arrangements are made, when Ball, Raff & Saxton are to give said Dodge, Stevenson & Co. six months notice thereof, and permit them to

Saxton *v.* Dodge.

sell any machines they may have in said territory unsold on receipt of said notice." 

And that they, the defendants, did accept and receive said license, and did engage in the manufacture and sale of reaping and mowing machines, which were from year to year varied in form and in detail, but all of which had the features herein before set forth; and the defendants did from time to time account to the said Ball, Raff & Saxton for the machines so made by them, and did pay them large sums of money, to wit: on the 4th day of January, 1864, the sum of $7500, and other sums at other times, amounting in the aggregate to many thousand dollars.

And the defendants further stated that the notes sued upon herein, were given for license fees under said license, and have no other consideration whatever to support them, except the right to use and vend the improvements described and claimed in said several patents, within the territory herein before and in said license named, so represented to belong to said Ball, Ruff & Saxton, and assumed and pretended by them in said license, to be granted to the defendants as aforesaid.

And the defendants alleged, on information and belief, that said notes were without consideration, inasmuch as the said several patents, as combined in the said machines known as Ball's Ohio Mower and Reaper and the Ohio Mower, Jr., were not valid patents at the time of the execution of said license, for the reason that the same improvements, substantially, were known and used long prior to the date of said several patents and prior to the alleged discovery or invention thereof by the patentees named in said several patents, by many persons in different parts of the United States; and among such persons who possessed such prior knowledge and used improvements the same substantially as those claimed in said patents and combined in said machines, the defendants named the following persons, to wit: John Butter, of Buffalo, New York;

Jonathan Haines, of Pekin, Tazewell county, Illinois; Hazard Knowles, deceased, formerly of Washington, D. C.; Joel Lupton, of Winchester, Va.; John W. Hubbard, of South Glastonbury, Hartford county, Connecticut; John I. Roane, of Washington, D. C.; John Gore, of Brattleborough, Vermont; and John E. Brown and Stephen S. Bartlett, of Providence, Rhode Island.

And they further stated that they, the defendants, did not know at the time of taking said license, and had no means of knowing, the fact of the invalidity of the said patents for want of novelty, as aforesaid.

And for a third and separate defense, the defendants represented, on information and belief, that there was fraud practiced upon them by the said Saxton, in the making of said license, in the subsequent taking of said money from the defendants, and in procuring of said notes, and the defendants stated that said fraud consisted in this, to wit: 1st. That prior to the date of said license, the said Saxton was interested in, as party or agent, certain suits in the Circuit Court of the United States for the Northern District of Ohio, numbered respectively, 1001 and 1002, wherein Cyrenus Wheeler, Jr., and Cornelius Aultman, respectively, were plaintiffs, and John English, et al. and A. McDonald, et al., respectively, were defendants, in which suits the issues involved the dates of the invention of the features of reaping and mowing machines herein before stated as essential features in said Ball's Ohio Mower and Reaper, and Ohio Mower, Jr.; and that in said suits it was fully and conclusively established that long prior to the date of the patents of said Ball, and to the time of his alleged inventions of the improvements described therein, one John E. Brown and one Stephen S. Bartlett had invented, made and used reaping and mowing machines embracing the same features; that these facts were evidenced by depositions and models taken and proved in said suits, and that such depositions and models

Saxton *v.* Dodge.

were, upon settlement of said suits, taken from the files of said court by said Saxton and retained by him; he, said Saxton, being fully aware of the facts established by said models and depositions. 2d. And the defendants alleged, on information and belief, that the said several letters patent, so as aforesaid issued to said Ball, were wholly void, for want of novelty, and that they were surreptitiously obtained, and that said Ball, Raff & Saxton, and said Saxton as their agent, well knew that the representations by him made as aforesaid, were untrue; and that said Ball was not the inventor of the said improvements so patented to him; that prior to the date of said alleged inventions by said Ball, persons other than said Brown and Bartlett had invented and used the same devices; and among such persons the defendants stated that John Butter, named in said patent of December 1, 1857, as assignee of one half interest thereof, was in fact the inventor of the improvements named therein, and that the assignment to him by said Ball, was without other consideration than the withdrawal by him, Butter, of opposition to the granting to him, Ball, of said patent, and that such facts were well known to said Saxton, before and at the time of the execution of said license.

And the defendants, for a further separate defense represented, on information and belief, that the said Ball, Raff & Saxton, prior to the time of executing to the defendants herein, the license as aforesaid, and contrary to the averments therein contained, and in violation of the exclusive privileges therein pretended to be granted to the defendants, and in fraud of the defendants' rights in the premises, executed to McDonald, Laughlin & Co., of Wooster, Ohio, a license and privilege to make, use and sell to others to be used, the said Ball's Ohio Mower and Reaper and Ohio Mower, Jr., combining said patented improvements, within the territory named in the license to the defendants as being exclusive to them, and that such

license was in full force and effect when the license to the defendants was executed, and still continues in force, and that the said McDonald, Laughlin & Co., licensees as aforesaid, had, under their license, made and sold such machines within the territory made exclusive to the defendants herein by their license. And that since the date of said license to the defendants, the said Ball, Raff & Saxton had granted licenses to other parties whose names were unknown to the defendants, in violation of the terms of the defendants' license.

By reason of the premises, the defendants alleged that the said notes in the complaint mentioned, were given by them under an entire mistake of vital and material facts unknown to them at that time, but then and since known to, and fraudulently concealed by said Saxton, and that said notes were consequently without consideration and void.

Wherefore the defendants demanded judgment that the complaint be dismissed, and that they might have judgment against the plaintiff for their costs incurred by reason of this suit, and for such other and further relief as might be equitable and proper.

The plaintiff demurred separately to each defense set forth in the answer, upon the ground of insufficiency in not stating facts sufficient to constitute a defense.

The demurrers in this action and in five other actions against the same defendants, were argued together at the special term; and an order made by the justice holding said term, directing judgment for the plaintiffs, respectively, upon the demurrers, in each of the suits upon the promissory notes; with leave to the defendants to amend on payment of costs.

*Geo. Rathbun,* for the appellants.

I. All the defenses demurred to in these suits (five in all) are set up for the purpose of establishing the invalid-

ity of certain letters patent therein set forth, and are based upon the right of the defendants to set up and establish the invalidity, or test the validity of such letters patent.

This court has, and all State courts of general jurisdiction, have jurisdiction to entertain a defense of want of consideration arising from the invalidity of letters patent. The correctness of our propositions can be shown by repeated decisions. It will be found that the highest judicial tribunals of the States, including the Supreme Court of New York, have repeatedly entertained jurisdiction of causes, the defense of which rested on the invalidity of letters patent, and have moreover pronounced upon the validity of patents, and decided that the sale or license of a patent right found by them to be invalid, formed no support for the consideration of a promissory note, and it is just such defenses that are demurred to in these suits. We cite *McDougall* v. *Fogg*, (2 *Bosw.* 387;) *Cross* v. *Huntly*, (13 *Wend.* 385.) Per Nelson, J.: "It is insisted by the defendant below, that the patent is void on the grounds, 1. That the machine for the making and vending of which the patent was granted, is not a new invention; and 2d. If new *in part*, the patent is void, inasmuch as it is for the *whole machine*, and not for the improvement. If either of these positions were sustained by the proof, the defendant was entitled to judgment in the court below, as in such case a failure of the consideration of the note was shown." (7 *Wheat.* 356. 3 *id.* 518. 4 *Com. Law R.* 357. 6 *id.* 509. 3 *id.* 27. 3 *Cond. S. C. Rep.* 360.) "From the evidence, there cannot be a doubt but that the patent in both respects is defective and void. * * * The patent being void, nothing passed to the plaintiff in error, and the note was given without consideration." Judgment reversed. (*Head* v. *Stevens*, 19 *Wend.* 411.) Suit on notes given for purchase of a patent right, verdict below for the plaintiff. Per Cowen, J.: "The learned judge erred in both of his decisions as to the validity of the patent. It

was void *in toto,* and formed no consideration for the notes." New trial. (*Bellas* v. *Hays,* 5 *S. & R.* 427, *in the Supreme Court of Ohio.*) Money paid on such notes may, on the ground of failure of consideration, be recovered back. (*Dart* v. *Brockway,* 11 *Ohio R.* 462. *Dickinson* v. *Hall,* 14 *Pick.* 217. *Lester* v. *Palmer,* 4 *Allen,* 145, 1862.) "Though the validity of a patent, when *directly* adjudicated upon, is exclusively within the jurisdiction of the courts of the United States, yet when they come into question *collaterally,* their validity must become a subject of inquiry in the State courts." (*Ch. J. Williams in Rich* v. *Hotchkiss,* 16 *Conn. R.* 414. *Parrott* v. *Farnsworth, Brayton,* 174. *Bliss* v. *Negus,* 8 *Mass. R.* 46.) The second point made by the counsel for the plaintiffs is that the defendants are estopped from contesting the validity of these patents, because, 1st. They are licensees (or "tenants") under them, and occupy the relation of tenants to their landlords; 2d. Because they have acknowledged the validity of the patents under their hand, in the agreement of license, and have agreed not to set up the invalidity of the patents. 3d. Because they have enjoyed the privileges of the license. Some other points are suggested, but they are subordinate to those above, and must fall with them, if those stated be not well taken. (*Ch. J. Marshall in Blights' Lessees* v. *Rochester,* 7 *Wheat.* 535, *as cited by plaintiffs.*)

In considering this subject, we ought to recollect, too, the policy of the times in which this doctrine originated. It may be traced back to the feudal tenures, when the connection between landlord and tenant was much more intimate than it is at present, when the latter was bound to the former by ties not much less strict nor much less sacred than those of allegiance itself. The propriety of applying the doctrines between lessor and lessee, to a vendor and vendee, may well be doubted. There is, too, a difference between setting up an adverse title in a third

person, to controvert an actual existing title, and resisting a claim made by a person having no title whatever. In the case last mentioned, it would appear that the plaintiff had a title which was in itself sufficient to maintain his action, but there was another and perhaps a superior title in a third person, with which the defendant was not connected. The rejection of all evidence of this title does not, we think, prove that the same court would have compelled the defendant to acknowledge a title of which no evidence was given, or rejected evidence of any title in himself, especially when the vendee received nothing—not even possession from the vendor.

.The mere taking of a license does not estop the licensee from contesting the validity of the patent licensed by it, or avoiding the payment of the note or license money, if the patent is invalid. In support of this proposition, we refer to the cases before cited, to wit: *Cross* v. *Huntly*, (13 *Wend.* 385;) *Head* v. *Stevens*, (19 *id.* 411;) *Geiger* v. *Cook*, (3 *W. & S.* 266;) *Bellas* v. *Hays*, (5 *S. & R.* 427;) *Dart* v. *Brockway*, (11 *Ohio Rep.* 462;) *Dickinson* v. *Hall*, (14 *Pick.* 217;) *Lester* v. *Palmer*, (4 *Allen*, 145;) *Cragin* v. *Fowler*, (34 *Verm. R.* 326;) *Clough* v. *Patrick*, (37 *id.* 421.) In all of which cases the invalidity of letters patent was held to be good defenses to the purchasers or assignees thereof. A license for the use of a patent is a lesser grant than either a total or partial assignment, and it would seem to follow, as a necessary conclusion, that if a purchaser and assignee of a patent can dispute the validity of the patent, and avoid his notes by showing its invalidity, the licensee having a lesser grant, can have the same relief. We also refer to the following authorities directly upon the point: *Neilson* v. *Fothergill*, (1 *Webs. Pat. Cas.* 290.)

In the last cited case, Lord Cottenham said: * * * "That is exactly coming to the point which I put—

whether at law the party was estopped from disputing the patentee's right, after having once dealt with him as the proprietor of that right. And it appears from the authority of that case, and from other cases, that from the time of the last payment, if the manufacturer can successfully resist the patent right of the party claiming the rent, he may do so in an action for the rent for the use of the patent for that year. The mere taking the license does not estop the licensee denying the validity of a patent." (*Mitchell* v. *Barclay, MS. Shipman, J., cited in Law's Dig. Pat. Cas. p.* 464.)

"The recitals in a deed can estop no one but parties or privies who are claiming under or against it, and in a controversy founded upon its covenants. The purchase of a license forms no bond of allegiance to the patentee, or an estoppel to the licensee from averring or proving any defense in an action for the infringement of a patent, which any other person might use." (*Judge Grier in Burr* v. *Duryee,* 2 *Fish. Pat. Cas.* 275.) Four of the five pending suits are founded on promissory notes, alleged to have been indorsed to the plaintiffs in the suits; in one, the Wayne County National Bank of Ohio is the plaintiff; in one, James A. Saxton is plaintiff; and in the others, James A. Saxton and John DeWalt are plaintiffs. It is clear that the transfer of the notes does not carry an assignment of the license, and therefore there is no privity between the holders of the notes and the licensees, by which the former can avail themselves of any advantage, by reason of any admissions contained in the license. And it is not pretended that there has been any actual assignment of the licence. "Estoppels are said to be *odious,* and are not favored. *Strangers* cannot avail themselves of an estoppel by mere writing or matter *en pais.*" (*Jackson ex dem. Jones* v. *Brinckerhoff,* 3 *John. Cas.* 101.) "One who is not bound by, cannot take advantage of, an estoppel." (*Lansing* v. *Montgomery,* 2 *John.* 382.) "Estoppels do not,

Saxton v. Dodge.

as a matter of course, extend to all who are in any manner in privity with the principal party." (*Campbell* v. *Hall*, 16 *N. Y. Rep.* 575.) Even if the plaintiffs were the licensors, they could not take advantage by way of estoppel, of any admissions in the license of the validity of the patents, (the question of fraud being left out of view,) for the reason that they have not been prejudiced thereby, or influenced into any line of conduct which they would not otherwise have pursued. An estoppel is an admission by the defendant, intended to influence the conduct of the man with whom he is dealing, and actually leading him into a line of conduct which must be prejudicial to his interests, unless the defendant be cut off from the power of retraction. This constitutes an estoppel *en pais*. (*Dezell* v. *Odell*, 3 *Hill*, 215. *Thorn* v. *Bell*, *Hill & D. Supp.* 430.) Four of the five pending suits are founded on promissory notes, and the complaints contain the usual averments in suits of such nature. The answers which are demurred to, aver that the license to use certain patents formed the consideration of the notes, and that such patents were and are invalid, but the license is not set forth in the pleadings; it is clear, therefore, that the court cannot inquire outside of the pleadings as to the contents of the license, in order to determine whether or not it contains recitals or admissions which operate as an estoppel. The other suit, the fifth, is a suit in equity, by Saxton and DeWalt v. Dodge, Stephenson & Co., and Ephraim Ball, the latter being one of the licensors, and being made defendant because, as alleged in the complaint, of his refusal to unite as plaintiff. In this suit alone is a copy of the license annexed to the complaint, and in this suit alone, therefore, can the court take notice of its contents. All the grounds herein before stated, when considering the operation and effect of a license, as not constituting an estoppel, and the want of privity between the licensees and the plaintiffs, are applicable to this last referred to suit, and need not be repeated.

An additional reason exists why the demurrers are not well taken, and should be overruled, which is applicable to all the suits, to wit: the fraud practiced by the licensors upon the licensees, in procuring said license and in obtaining the notes and money given and paid under it. It is distinctly averred, in all of the suits, that the licensors had procured their patents fraudulently; that they knew they were invalid, and did not protect or cover the machines made by the defendants; that Saxton, the agent of the licensors, who executed the license, had withdrawn from the files of the court, and suppressed, evidence in the form of depositions, and models showing the want of novelty and consequent invalidity of such patents, and had procured such license, and the money and notes under it, while possessing such knowledge. All these averments the demurrers admit to be true. That fraud avoids every contract into which it enters, is a principle lying at the very foundation of the law. "There is positive fraud when a party intentionally, or by design, misrepresents a material fact, or produces a false impression, in order to mislead another, or to entrap or cheat him, or to obtain undue advantage." (*Story's Eq.* § 192. *Willink* v. *Vanderveer*, 1 *Barb.* 599.) "Fraud, in the sense of a court of equity, properly includes all acts, omissions and concealments which involve a breach of legal or equitable duty, trust or confidence justly reposed, and are injurious to another, or by which an undue or unconscientious advantage is taken of another." (1 *Story's Eq.* § 187. *Gale* v. *Gale*, 19 *Barb.* 249. *Whitney* v. *Allaire*, 1 *N. Y. Rep.* 305.)

*Pomeroy & Tracy*, for the respondents.

I. The first four suits are on promissory notes, made by the defendants, payable to the order of Ball, Raff & Saxton, and by them indorsed, before maturity, to the respective plaintiffs. 1. The first answers demurred to allege that the notes sued upon in these actions were given for

Saxton *v.* Dodge.

"license fees," under a license granted to the defendants by Ball, Raff & Saxton, by J. A. Saxton for himself and as attorney for Ephraim Ball and Daniel Raff, conferring upon the defendants "the exclusive right and privilege of making, using and vending to others to be used, the improvements in mowing and reaping machines" specified in certain letters patent, "the defendants did accept and receive said license, and did engage in the manufacture and sale of reaping and mowing machines, and the defendants did, from time to time, account to the said Ball, Raff & Saxton, for the machines so made by them, and did pay them large sums of money. That said notes are without consideration, inasmuch as the said patents, as combined in the said machines,  *  *  were not valid at the time of the execution of said license, for the reason that the said improvements, substantially, were known and used long prior to the date of said several patents, and prior to the alleged discovery or invention thereof by the patentees named in said several patents, by many persons in different parts of the United States." That prior to the granting of such license, "the said Ball, Raff & Saxton had expressed their desire that the defendants should engage in the manufacture and sale of mowing machines,  *  *  *  and should take from *them* a license for the use therein of certain patents which *they* claimed to own," &c.  "That the said James A. Saxton, acting for said Ball, Raff & Saxton, as well as for himself,  *  *  *  represented to these defendants that letters patent  *  *  *  were issued by the United States, covering certain improvements," &c., embodied in such machine.  "And that said letters patent, and that each of them, were valid and subsisting patents, and were owned by said Ball, Raff & Saxton, and that they fully protected and covered the several essential parts of said machine," &c.  And the defendants, "relying upon the said representations, and believing that they would be protected,  *  *  *  did con-

Saxton *v*. Dodge.

sent to accept a license from said Ball, Raff & Saxton," &c. And that "the defendants did not know at the time of taking said license, and had no means of knowing, the fact of the invalidity of the said patents for want of novelty, as aforesaid." 1st. It was well said by the court at special term, that "in considering the sufficiency of the counts setting up the several defenses above stated, it is material to inquire whether the defendants may avail themselves, in these actions, of any defense which existed against the notes in the hands of the original payees, or whether the plaintiffs are to be regarded as *bona fide* transferees of commercial paper, for value." And that "this question is to be determined by a reference to the facts alleged in the counts demurred to, and in the complaints to which such counts are interposed; neither count can be decided by a resort to another count in the same answer. Each must contain a complete defense in itself." (*Spencer* v. *Babcock*, 22 *Barb*. 335. *Swift* v. *Kingsley*, 24 *id*. 541. *Brown* v. *Ryckman*, 12 *How*. 314. *Cobb* v. *Frazee*, 4 *id*. 413.) Each of the complaints, in the actions on the notes, avers that the notes were made by the defendants to the order of Ball, Raff & Saxton, and by them indorsed to the several plaintiffs before maturity. This averment is not denied or controverted by either of the counts demurred to, nor do either of them allege that the plaintiffs were not purchasers for value, or that they took with notice of the defenses interposed. Nor is there any averment tending in any degree to controvert the good faith of the plaintiffs' title, and there is no ground for such presumption. The plaintiffs then having taken the notes before maturity, and being purchasers for value, and without notice of the defenses interposed, are *bona fide* transferees and holders of the same, and the defendants cannot avail themselves, in this action, of any defense which existed against the notes in the hands of the original payees. (*Vallett* v. *Parker*, 6 *Wend*. 615. *Rockwell* v.

*Charles*, 2 *Hill*, 499. *Mickles* v. *Colvin*, 4 *Barb*. 304. *Davis* v. *McCready*, 17 *N. Y. Rep*. 230.) 2. The second answers demurred to, allege " that there was fraud practiced upon the defendants by the said Saxton, in the making of said license, and in the subsequent taking of said money from the defendants, and in procuring of said notes," and states two grounds upon which the allegation of fraud is founded. " And that such facts were well known to said Saxton before and at the time of the execution of said license." The second counts demurred to, setting up the defense of fraud, are insufficient for the same reasons as stated in the point under the first counts demurred to as against the present holders of the notes. The counts setting up the defense of fraud are also insufficient, for it does not appear by such answers that any representations were made to the defendants by their licensors, or that the defendants were misled by any representations of the plaintiffs to their prejudice or injury, or that they were induced to enter into the agreement by any representations, or that they have suffered any loss or damage resulting from any fraud on the part of the plaintiffs, or that the plaintiffs ever knew of any of the facts alleged as constituting fraud. It is only alleged that " Ball, Raff & Saxton, and Saxton their agent, well knew," &c., the facts alleged. This is not sufficient. It must appear " that the plaintiffs made the representations falsely and fraudulently, and with intent to deceive the defendants." (*Addington* v. *Allen*, 11 *Wend*. 374, [414.] *Wells* v. *Jewett*, 11 *How*. 242. *Palmer, assignee*, v. *Smedley*, 18 *id*. 321.) " That the defendants were misled by the representations, or their belief in the truth of the representations induced them to enter into the contract." (*Van De Sande* v. *Hall*, 13 *How*. 458.) " And that a damage resulted from such fraud, to the defendants, and that they were misled to their prejudice." (*Vernon* v. *Keys*, 12 *East*, 632, 638. *Story's Eq. Jur*. § 203. *Bacon* v. *Bronson*, 7 *John. Ch*. 201.) And this must be determined by the

facts alleged in the count, and cannot be aided by a resort to another count in the same cause. (*Spencer* v. *Babcock*, 22 *Barb*. 335. *Swift* v. *Kingsley*, 24 *id*. 541.)   3. The third and last answers demurred to in the actions on the notes, allege "that the said Ball, Raff & Saxton, prior to the time of executing to the defendants herein the license as aforesaid, and contrary to the averments therein contained, and in violation of the exclusive privileges therein pretended to be granted to the defendants, and in fraud of the defendants' rights," &c., executed to other parties a similar license to make, use and sell the same machines, and combining the same patented improvements, and within the same territory, &c.; "and that such license was in full force and effect when the license to the defendants was executed, and still continues in force," &c., and that such parties, under their license, have made and sold machines within the territory made exclusive to the defendants by their license. And that "since the date of said license to the defendants the said Ball, Raff & Saxton have granted licenses to other parties  *   *   in violation of the terms of the defendants' said license." The defendants then allege that the said notes "were given by them under an entire mistake of vital and material facts unknown to them at the time, but then and since known to, and fraudulently concealed by, said Saxton, and that said notes are consequently without consideration. The third counts demurred to, setting up the defense of the issuing of other licenses, in violation of the rights of the defendants, are insufficient for the reasons stated in the first point to the first count. The third counts demurred to are also insufficient for the reasons stated in the last point to the second counts demurred to. The third counts demurred to are also insufficient, for the reason that only a violation or breach of contract by Ball, Raff & Saxton is shown.

5. The fifth of said suits is brought by Saxton & De-Walt, to recover royalties or patent fees under the license

referred to in the actions on the notes. Saxton claims as one of the original licensors, and DeWalt as the assignee of the interest of Raff, and part of the interest of Ball. Ball retaining an interest, and not consenting to unite in bringing the suit, is made a defendant for that reason. The answer of Dodge, Stevenson & Polhemus contains thirteen separate counts. The decision sustaining the demurrers to the eighth, ninth, tenth, eleventh and twelfth counts is appealed from. Each of these counts is set up as a counter-claim. The eighth count, styling itself a a counter-claim, sets up in substance, that the agreement of the defendants to pay the license fees was void for want of consideration, the patents to which the license related being void for want of novelty, &c. This count can in no view of the case be a counter-claim. It does not show a demand of any kind against the plaintiffs, and the name of DeWalt does not appear at all. A counter-claim is where the demand is against the plaintiffs, and for which judgment might be recovered against them. (*Tyler* v. *Willis*, 33 *Barb.* 327.) And it is a demand existing in favor of the defendants and against all the plaintiffs in the action, and between whom a several judgment might be had in the action. (*Code*, §§ 149, 150. *Davidson* v. *Remington*, 12 *How.* 310. *Van De Sande* v. *Hall*, 13 *id.* 458. *Duncan* v. *Stanton*, 30 *Barb.* 536.) None of the facts necessary to constitute a counter-claim is alleged. The ninth, tenth, eleventh and twelfth counts contain certain demands alleged to have arisen out of transactions of Dodge, Stevenson & Co., defendants, with Ball, Raff & Saxton. Even if these demands have any validity, they exist only against Ball, Raff & Saxton, and are not available as counter-claims in an action brought by Saxton & DeWalt, and they have no connection with the license in suit. (*Ives* v. *Miller*, 19 *Barb.* 196, *and authorities cited under last point.*)

II. The defendants are estopped from setting up the defense of invalidity of the patents in the suit on the notes,

or on the license. A copy of the license is annexed to the complaint, dated 22d of October, 1862. By its terms the licensors grant to Dodge, Stevenson & Co. the exclusive right and privilege of making, using and vending to others to be used, certain improvements in mowing and reaping machines, specified in several letters patent, therein particularly described, and any other patents that the licensors then owned or controlled, or might thereafter obtain, as combined in the machine known as Ball's Ohio Mower and Reaper, and the Ohio Mower, Jr., until the expiration of said patents, unless the license should be sooner annulled, in the manner thereafter provided for, in certain territory therein described, on the following terms and conditions: 1st. For said privilege, Dodge, Stevenson & Co. agree to pay to the licensors, or their order, fifteen dollars for every machine sold by them, with provision for a discount from that sum in certain cases, but to pay at least five thousand dollars on 1st of January in each year, whether they sell any machines or not. To keep said territory reasonably supplied with machines for sale, and to make and sell no other reaper or mower. 2d. Dodge, Stevenson & Co. thereby acknowledge the validity of said patents, and agree not to dispute or set up any defense against their validity in any action or suit upon, or controversy arising out of said license, or upon any notes or obligations given on settlement of patent or license fees accruing under it. 3d. Dodge, Stevenson & Co. agree to render to said licensors, by 1st of January, annually, an account of the number of machines made by them during the previous year. 4th. All machines made by Dodge, Stevenson & Co. to be numbered consecutively, and to be made of the best materials. 5th. On default in either of said conditions by Dodge, Stevenson & Co., or failure to give the licensors notice by the 1st of September, annually, of their intention to continue said license for the succeeding year, the licensors may revoke the same, but the licensees shall pay

the said license fee, or agreed damages, on all machines made before said notice is given. It is further agreed, that for all machines the licensees may sell, and fail to get pay for within eighteen months after maturity, in consequence of insolvency of purchaser, the licensor will remit such portion of the license fee as the licensees lose of the price. And this is the same license set up in the answers in the actions on the notes, and is there set out substantially as above, with the exception of the second clause, acknowledging the validity of the patents and agreeing not to defend, &c. The complaint in the equity suit alleges, and the answer admits that after receiving the license, Dodge, Stevenson & Co. manufactured and sold machines under said license, and paid to the licensors large sums as license fees therefor. It appears, then, that these suits are brought for the sole object of recovering the stipulated license fees for such machines as the defendants have actually sold and reaped the profits of by virtue of the license. They cannot, therefore, set up in either suit the alleged invalidity of the patents as a defense, nor can they aver a want of consideration. 1st. It is a well established principle of law that the tenant is estopped from denying his landlord's title, and the lessee from denying the title of the lessor. (*Taylor's L. & E.*, 7, § 339. *Jackson* v. *French*, 3 *Wend.* 339. 2 *Phil. Ev.* 279, 2*d. ed. Jackson* v. *Smith*, 7 *Cowen*, 717. *Ingraham* v. *Baldwin*, 9 *N. Y. Rep.* 45. *C. & Hill's Notes*, 201. *Jackson* v. *Whedon*, 1 *E. D. Smith*, 141. *Blight* v. *Rochester*, 7 *Wheat.* 535. *Crosby* v. *Dickson*, 10 *House of Lords*, 293. *Smith* v. *Scott*, 5 *Juris. N. S.* 156.) This principle of estoppel between landlord and tenant, and lessor and lessee, as intended to be presented and applied to these cases, is laid down in the case of *Glynn* v. *George*, (20 *N. H. Rep.* 114,) wherein it is said, " one who is in possession of land under a license cannot dispute the title of the grantee, or the party from whom such license is derived," &c. 2d. The relations between lessor and lessee of a patent right are

analogous to the relations of landlord and tenant, and the principle of estoppel between landlord and tenant has been recognized as the rule between lessor and lessee of a patent right by the courts since earliest history of legal jurisprudence, as connected with patent rights, and the defendants are estopped from denying the validity of the patents in these suits. (*Taylor's survivors &c.* v. *Hare*, 4 *Bos. & Pull.* 260. *Laws* v. *Purser*, 38 *Eng. L. & Eq.* 48. *Hills* v. *Laming*, 24 *id.* 45. *Hall* v. *Condon*, 1 *Cond. Rep., U. S.*, 20. *Glenn* v. *George*, 20 *N. H. Rep.* 114. *Stevens* v. *Head*, 9 *Verm. Rep.* 174. *Wilder* v. *Adams*, 2 *Wood & Min.* 329. *Davis & Co.* v. *Gray*, 17 *Ohio Rep.* 330, *N. S. Cutler* v. *Bower*, 11 *Ad. & Ell.* 253. *Bowman* v. *Taylor*, 2 *id.* 278. *S. C.*, 4 *Nevill & Man.* 264. *Bartlett* v. *Holbrook*, 1 *Gray*, 114. *Kernodle* v. *Hunt*, 4 *Blackf.* 57. *Kinsman* v. *Parkhurst*, 18 *How. U. S. Rep.* 292, *affirming* 1 *Blackf.* 488.) 3d. The defendants have acknowledged the validity of the patents under their hands as licensees under the contract, and having agreed not to dispute or set up any defense against their validity in any action or suit upon, or controversy arising out of the license, or agreement, or upon any notes or obligations given on settlement of patent or license fees accruing under it, are estopped from setting up as a defense the invalidity or want of utility or novelty in the patents. (*S. C.*, 2 *West. Law J.* 396. *Brooks* v. *Stolley*, 3 *McLane*, 526. *Burritt* v. *Rench*, 4 *id.* 325. *Wilder* v. *Adams*, 2 *Wood & Min.* 329.) 4th. The defendants have had the license to make and sell that which they agreed for, and have enjoyed the privileges granted thereunder since the date of the license. They have received profits from it, and they are only asked to pay over the proportion of those proceeds which they agreed to. They have lost nothing in all this, if the patents were invalid. They have never revoked the license. They have had the same benefit they would have had if the patents were valid. They have lost no benefit. The patents have never been

declared invalid. The defendants have never given notice of the invalidity of the patents ; and they are estopped from denying their validity here. An agreement with a patentee to manufacture his patented machine upon certain terms and conditions, or for a stipulated royalty, and making and selling such machines under the patentee's title, and receiving the profits therefrom, estops such party in an action for an accounting, or for a recovery of the patent fees, from alleging the invalidity of the patents. (*Kinsman* v. *Parkhurst*, 18 *How. U. S. R.* 293. *Sprigg* v. *Bank of Mount Pleasant*, 10 *Peters*, 257. *Bradley* v. *Richardson*, 2 *Blackf.* 343. *S. C.*, 8 *N. Y. Leg. Obs.* 146, *and cases cited under 2d sub. of Estoppel.*) 5th. If the patents were invalid, it would not render the sales of the machines illegal, so as to release the lessees from their obligations to their lessor. (*Kinsman* v. *Parkhurst*, 18 *How. U. S. Rep.* 293. *Sharp* v. *Taylor*, 2 *Phil. Ch. R.* 801. *Tenant* v. *Elliott*, 1 *B. & P.* 3.)

III. All the defenses demurred to in these suits are set up for the purpose of impeaching the consideration of the plaintiff's claims by establishing the invalidity, for want of novelty, of the letters patent therein set forth. The jurisdiction to do this is by the constitution (*Const. U. S. art.* 3, §§ 1, 2) vested exclusively in the federal courts, and the former Supreme Court or Court of Chancery of the State of New York had no jurisdiction, and the present Supreme Court of this State has no jurisdiction, to entertain such defense. 1. The jurisdiction to entertain the question of the validity or invalidity of, or want of novelty in letters patent, does not exist in the Supreme Court of the State of New York independently of the constitution and laws of the United States. And no power of jurisdiction can be conferred upon the State courts by congress, under the constitution. (*Const. U. S. art.* 3, §§ 1, 2. *Dudley* v. *Mayhew*, 3 *Comst.* 9. *U. S.* v. *Lathrop*, 17 *John.* 4. *Martin* v. *Hunter's Lessee*, 1 *Wheat.* 334–7. 3 *Story on*

Saxton *v.* Dodge.

*Const.* §§ 1748, 49.. *Manhardt* v. *Soderstrone,* 1 *Binney,* 138. 1 *Kent's Com.* 372, 1st *ed.* 3 *McLean,* 180. *Curtis on Pat.* 516, §§ 405, 406. *Phil. on Pat.* 378, *&c. Sickles* v. *The Gloucester Manufacturing Co.,* 1 *Fish. Pat. Cas.* 222.) 2. And if congress has the power to confer upon State courts jurisdiction to entertain these defenses, yet it has not done so; but, on the contrary, has vested the jurisdiction exclusively in the federal courts by necessary implication. (*Patent Laws* 1836, § 17. *Dudley* v. *Mayhew,* 3 *Comst.* 14. *Elmer* v. *Pennel,* 40 *Maine R.* 434. *Parsons* v. *Barnard,* 7 *John.* 144. 5 *Pet. Laws U. S.* 124. *Almy* v. *Harris,* 5 *John.* 175. 5 *Cowen,* 165. *Almy* v. *Hawkins,* 6 *Blackf.* 125. *Long* v. *Scott,* 1 *id.* 405. *Patent Laws* 1837, § 2. 9 *John.* 507. *Livingston* v. *VanIngen,* 9 *id.* 507. 4 *Burr,* 2319, 2323. 5 *Mass. R.* 514. 5 *Watts & Serg.* 163. 2 *Penn. R.* 462. 1 *Paine,* 45. 5 *McLean,* 38, 336. 2 *Wood & Min.* 27. 4 *McLean,* 402. 17 *How. U. S.* 455. 4 *Duer,* 382.) 3. The right to entertain the question of validity or invalidity of patent rights being created by the constitution of the United States, and by congressional legislation, and this court having received no jurisdiction of that question from that source, cannot entertain this defense, for it has no power to do so at common law, and has received no power under the constitution or statutes of this State; and even fraud cannot give this court jurisdiction. (*Livingston* v. *VanIngen,* 9 *John.* 507. *Parsons* v. *Barnard,* 7 *id.* 144. *Dudley* v. *Mayhew,* 3 *Comst.* 14, *and other cases before cited.*)

*By the Court,* JOHNSON, J. I am clearly of the opinion that the learned judge at special term was in error in sustaining the demurrer to the second defense set up in the answer. The note on which the action is brought is payable to the order of " Ball, Raff & Saxton."

The complaint alleges that the payees duly " indorsed, assigned and transferred" the same to the plaintiff. This is not denied by the second answer, and must be taken to

Saxton *v.* Dodge.

be admitted, so far as is necessary to constitute the plaintiff the sole and exclusive owner and holder of the note for value.  The answer in question, in substance and effect, though not in direct terms, alleges that the plaintiff is one of the payees of the note.  The learned judge at special term admits that this is fairly to be implied from the averments in the answer.  The demurrer to the answer must be taken to admit this fact as true.  Thus we have the fact incontrovertibly established, for all the purposes of this issue of law, that the plaintiff is the same person who is one of the joint payees of the note, and that the transfer to him was by himself with the other payees.  In other words, that he, by such transfer, acquired the interest only of his associate payees in the note.  The answer then sets up a total want of consideration for the note in question, in matter and manner conceded to be sufficient to defeat the note, had the action been brought in the name of the payees.  But the answer was held to be defective in this, that it did not allege that the plaintiff, at the time he became the sole and exclusive owner and holder, knew the facts which rendered the consideration of the note worthless.  It was held that the plaintiff, although one of the payees, was entitled to protection as any other purchaser for value.  Is this so?  I think not.  It is not disputed that had the action been in the name of all the payees, the allegation of notice or knowledge, of the entire worthlessness of the consideration, would not have been necessary.  I think it is equally unnecessary where all the other joint payees transfer their interest to one of their number and the action is brought by him.  I can conceive no good reason why he does not stand upon the same footing in this respect that he did before.  I do not think it is in the power of several joint payees of a note to escape a just defense to it by such a contrivance.  If a payee of a note indorses it over to himself, as the plaintiff has here, he does not in any respect change his position.  Obviously,

it may be defended, as against him, upon the same principle after the indorsement as before. I do not find this precise point anywhere adjudged, but, upon general principles, I think it must be so. He does not stand upon the footing of a *bona fide* indorsee and holder in the usual course of business. He could have no remedy by action against his indorsers, because he is one of them, and no man can be both plaintiff and defendant in the same action. This is well settled by numerous authorities. (1 *Pars. on Notes and Bills*, 137. *Chitty on Bills*, 70, 71, 72. *Smith* v. *Lusher*, 5 *Cowen*, 688. *Pitcher* v. *Barrows*, 17 *Pick.* 361. *Mainwaring* v. *Newman*, 2 *B. & P.* 120. *Neale* v. *Terton*, 4 *Bing.* 194. *Teague* v. *Hubbard*, 8 *B. & C.* 345.) If the note passed to him by indorsement, as the pleadings here admit, the plaintiff was necessarily one of the indorsers to himself. This question, it is true, affects only the remedy between indorsee and indorser, and would not affect a third person deriving title *bona fide* from such an indorsee. But it serves, in some degree, to show, I think, that such a transfer as we have here, is out of the usual course of business. But the real point is, that the action is brought by one of the payees, and as to a payee, no notice, of the want or failure of the consideration, is necessary to constitute it a defense. It is very clear, I think, that the plaintiff is not to be regarded a *bona fide* holder, the same as though he had not been one of the original payees.

The defendants are not estopped from setting up this defense against these notes. It appears from the answer, that the note in question was given for the amount claimed to be due, under and by virtue of a certain contract between the defendants and the payees of the note. The said payees claimed to have a patent, which gave them the exclusive right to make and vend reapers and mowers, with certain specified improvements, and gave a license to the defendants to make and vend such reapers and mowers, and also to sell territory for a certain specified considera-

Saxton *v.* Dodge.

tion, called lieense fees, which the defendants agreed to pay. The note was given for these fees. The defense is, that this patent was void, and conferred no exclusive right whatever upon the payees of the note. So far as the question of estoppel is concerned, the case stands upon the same footing that it would had the action been to recover the fees. If the payees of the note had no such exclusive right, the defendants acquired nothing by the license. They merely obtained a license to do what they had the same right to do without any license. The license conferred no right, for the licensors had none to confer. I do not see, therefore, why the defendants may not set up this want of consideration in this case as well as in any other arising upon contract. It is not like the case of a landlord and tenant, where the latter gets possession of premises, and has the benefit of the use and occupation, and the rents and profits. Here the defendants received nothing visible or tangible. They obtained only a pretended exclusive privilege, which the licensors did not own or possess, and could bestow upon no one. Under such circumstances, I can see no justice in precluding the defendants from asserting the truth. The true rule, I think, is, that where a party gets nothing by the contract sought to be enforced against him—neither title nor possession of property—he is not estopped from setting up his defense. The case of *Hayne* v. *Maltby* (3 *D. & E.* 438) is an illustration of this principle. There A., claiming to have a right to a patent machine, covenanted with B. that he might use it in a particular manner, in consideration whereof, B. covenanted that he would not use it in any other. In an action brought by A., against B., for a breach of this covenant, it was held that B. was not estopped from showing that the invention was not new, and that the patent was therefore void.

So in the case of *Bliss* v. *Negus*, (8 *Mass. R.* 46.) In

that case, in addition to the assignment of the patent for which the note was given, the plaintiff furnished the defendant with certain samples, and some paint to be used in the art. He also sent a man and boy to labor in the art two days, in the presence of the defendant, by way of instruction, which was part of the agreement. And yet the court held that the defendant was not precluded from showing that the patent was void. The court say: " The assignor lost nothing, nor did the assignee acquire anything." As to what was furnished, the court say that as it pertained to the pretended right, and the art, it was neither useful nor valuable to the defendant, and did not affect the principle. In *Dickinson* v. *Hall*, (14 *Pick.* 217,) the action was upon a note given in consideration of the assignment by the plaintiff to the defendant, of a limited right to the use of a patented machine for breaking and dressing hemp. The plaintiff covenanted with the defendant that he had a good right, and lawful authority to sell and convey the right, and undertook to warrant and defend the same to the defendant. The plaintiff believed he had a valid and useful right. The defense was that the patent was void; that it was neither a new nor a useful invention. The jury found for the defendant. On motion for a new trial, the court held that the defense was maintainable, and that the defendant, having received no value, his promise was *nudum pactum.* Indeed, it would be quite absurd to hold that an estoppel could be predicated upon a *nudum pactum.*

It does not appear in this case, either by the complaint or the answer in question, that it was part of the agreement that the defendants should not dispute the plaintiff's right and title, and would not set up any defense against the validity of the patent in any action against them, to enforce their promises made in consideration of the license. It does appear in another action between some of these parties that such was part of the defendant's agreement.

But we cannot go outside of the pleadings in this action, to determine the issue of law raised. It may be remarked, however, that if the whole arrangement was *nudum pactum*, this stipulation by the defendants would be as void as any other part, and could not estop.

There is no force in the plaintiff's objection that this court has no jurisdiction to try the question of want of consideration, because it would necessarily involve an inquiry into the validity of the patent. If the issue was patent or no patent, or right or no right under it, so that the judgment would determine that question, one way or the other, the objection would be well taken. (*Dudley* v. *Mayhew*, 3 *N. Y. Rep.* 9.) But that is not the issue here. The action is upon the note, and the defense is a total want of consideration. The issue therefore is, consideration or no consideration, of a promissory note. The inquiry into the validity of the patent, or of the license, comes in collaterally only, by way of evidence. In such cases the court may inquire into the validity of a patent as well as anything else, for the purpose of determining the question of consideration. Cases involving just such defenses as this, are very common in our State courts. In addition to the cases cited on the other point, I refer to the cases in our own court, of *Cross* v. *Huntly*, (13 *Wend.* 385;) *Head* v. *Stevens*, (19 *id.* 411;) and *Snow* v. *Judson*, (38 *Barb.* 210.)

The true test, I apprehend, in all such cases is, whether the judgment upon the issue, allowing the court to have jurisdiction, would affect or determine the right claimed under the patent. All which the judgment in this action could determine would be, whether the note was a valid promise. Indeed, it is plain enough that no United States court would have jurisdiction to try this action, all the parties residing in this State. (*Brooks* v. *Stolley*, 3 *McLean*, 523. *Burr* v. *Gregory*, 3 *Paine*, 426.)

The third answer, clearly, does not state facts sufficient

to constitute the defense of fraud. It alleges, generally, that the plaintiff made false representations, knowing them to be so; but does not allege that the defendants relied upon such statements, and entered into the bargain supposing and believing them to be true. The fourth answer is also equally defective, and neither, taken separately, constitutes any defense to the note.

'The demurrers to the third and fourth answers are, therefore, well taken, and the order sustaining the demurrers to those answers should be affirmed.

The order, so far as it sustains the demurrer to the second answer, should be reversed, and an order entered overruling the demurrer to that answer and ordering judgment for the defendants thereon, with leave, however, to the plaintiff to notice his action for trial, and try that issue.

[MONROE GENERAL TERM, March 7, 1870. *Johnson, E. D. Smith* and *Dwight,* Justices.]