Marston v. Swett.

---

MARSTON v. SWETT.

*Former adjudication — when parties concluded by — Defense — of invalidity of patent in action for royalties.*

H. assigned a patent obtained by her to plaintiff and defendants. Defendants and plaintiff then agreed that defendants should have the exclusive right to manufacture the patented article, and should pay plaintiff a specified royalty on each article. Subsequently a patent for the same invention was issued to one G. Defendants acquired the patent of G., and brought action in the United States court against H. and plaintiff, wherein the patent of H. was declared void. In an action by plaintiff to recover the amount of royalty agreed to be paid, *held* (1), that the decision of the United States court concluded the parties upon the question of the invalidity of the patent, and whether the patent to G. was obtained collusively; (2) that the ownership in common did not preclude defendants from setting up the invalidity of the patent as a defense, and (3) that plaintiff had no claim against defendants. *Kinsman* v. *Parkhurst*, 18 How. (U. S.) 289, distinguished.

APPEAL by plaintiff from a judgment in favor of defendant upon a verdict directed by the court.

The action was brought by William E. Marston against George W. Swett and others to recover royalties for the manufacture of

a patented article. The facts are similar to those in the case of *Hawks* v. *Swett, ante,* page 529. The plaintiff in this action and defendants were assignees in common of the letters patent from Elizabeth Hawks, the plaintiff in the case referred to. After the assignment it was agreed that defendants should have the exclusive right to manufacture the article patented, and should pay plaintiff a royalty of fifty cents upon each stove, etc., containing it. Such other facts as are material appear in the opinion.

*James Lansing,* for appellant.

*Esek Cowen,* for respondent.

Present — LEARNED, P. J., BOARDMAN and POTTER, JJ.

LEARNED, P. J. This case is like that of Hawks against the same defendants, *ante,* page    , in many respects. The additional facts, which are important, are that Marston, the plaintiff, and Swett and others, the defendants, were the assignees of the alleged patent-right of Elizabeth Hawks, by virtue of the assignment made by her in 1867, and of the second assignment made by her in 1870, after the surrender and re-issue. Being such owners in common, the defendants agreed with Marston that they should have the exclusive right, and that he should not license others.

In consideration of this, they agreed to pay him fifty cents for each stove manufactured, containing said invention. It appears that this agreement was not in writing, and the answer (the admissions in which are the only proof of the agreement) qualifies the admission by the averment that the condition of the verbal agreement was that the plaintiff should execute a written agreement to the same effect, which he has refused to do. It is not denied that the defendants have made stoves, to a certain number, which would be under the patent, if the patent were valid. The same questions as to the effect of the invalidity of the patent are raised, which were in the other case.

A question was made whether this verbal contract was valid under the statutes of frauds ; and a similar question whether it was valid under the patent laws ; the contract being, as was claimed, in effect an assignment of the patent, and not being in writing. But without passing upon these, I come to the important point,

which is, whether the plaintiff can recover these fees, when the letters patent have been declared void.

Most of what was said in the former opinion is applicable here Marston was a defendant in the suit brought in the United States court by these defendants, in which the letters patent were declared to be void, and Mrs. Hawks was adjudged not to be the inventor. He had an opportunity there to contest the question of invalidity, and to urge that, as to himself, these defendants were estopped. He might have claimed (with what success it is unnecessary to say), that the decree should be so qualified as to preserve any rights between him and these defendants, arising out of their contract. But that was not done, and the decree must be held conclusive.

The plaintiff in this action made some offers tending to show collusion by the defendants with Goodfellow. But so far as those offers were of any weight, they were only an indirect attack on the decree in the United States court. If the alleged collusion was a good defense, it would have been shown in that suit.

It is urged by the plaintiff's counsel that the ownership in common of the alleged patent right prevents the defendants from averring its invalidity as a defense. And the case of *Kinsman* v. *Parkhurst*, 18 How. (U. S.) 289, is relied upon. In that case a patentee and an assignee of a part interest entered into the joint business of manufacturing the patented machines. The business was to be carried on by the parties on joint account, and a division of the profits was to be made according to a certain ratio. After the business had been carried on for a time, a bill was filed for an accounting. The defense was the invalidity of the patent. The court held this no defense. The defendants had "made and sold the machines under the complainant's title *and for his account.*" "The invalidity of the patent does not render the sales of the machines illegal." "Where money has been received, either by an agent or a joint owner, by force of a contract which was illegal, the agent or joint owner cannot protect himself from accounting for what was so received."

That does not apply to this case. If Marston had been in partnership with these defendants, in the manufacture of these stoves, he might have been entitled to his share in the profits, as should have been agreed. But there was no joint ownership of the business. The defendants were only his licensees under a patent which

proves to have been void. And this case falls under that of *Saxton* v. *Dodge*, 57 Barb. 84, and others like it in this State. *Kinsman* v. *Parkhurst* was not an action for license fees or for purchase of a patent right. It was for the accounting and settlement of a joint venture. And the only important question was, how much was made by the venture, and not whether it was made with or without a valid patent right.

Another case relied on by the plaintiff is that of *Cutler* v. *Bower*, 11 Q. B. 140. It is worth while to examine this case briefly, as it is supposed to be important in both of these actions. The facts are these: In July, 1842, the plaintiff, Cutler, had granted the defendant, Brown, thê sole license to make certain patent machines on payment of a royalty. In October, 1842, the plaintiff, in consideration of a certain sum, sold one-half of the patent to the defendant, the defendant to have the benefit of one-half of the royalty reserved by the previous agreement. The plaintiff sued for this sum, the consideration of the sale. There was a plea, replication and demurrer. The court held: 1. That the consideration did not fail by reason of the alleged invalidity of the patent; for the defendant, at all events, was bound by the agreement of July to pay the royalty, whether the patent was valid or not; as he would be estopped in an action on that deed from denying the validity. 2. That the proposed defense would be available only if the covenants (referring to the covenant of warranty in the deed of October) were dependent; that in fact they were independent, and each party might sue for a breach of the respective covenants.

Now, the second reason would not be good here, where a counterclaim can be made on a cause of action arising upon the same instrument. Code, § 150, subd. 1.

And the first reason is directly overruled in the case of *Saxton* v. *Dodge, supra*, and in the similar cases mentioned in the opinion in the other action. On a question which seems to be settled in this State it is not necessary to refer to the decisions of other States sustaining the same view. Such too seems to be the doctrine of a late case in England. *Nelson* v. *Fothergill*, 1 Web. Pat. Cas. 290, in which Lord Cottenham says: "From the time of the last payment, if the manufacturer can successfully resist the patent right of the party claiming the rent, he may do so in an action for the rent for the use of the patent for that year. The mere taking the

license does not estop the licensee from denying the validity of the patent."

And, certainly, when it has been decided that in an action for the consideration of a sale of a patent right, the invalidity of the right may be shown, it necessarily follows that the same rule must apply in an action for royalties, so called, or license fees. The contrary decision in *Cutler* v. *Brown, supra,* may, very possibly, have been controlled by the conclusive effect there given to a sealed instrument.

I think, therefore, that the court correctly held that the plaintiff had no claim against the defendants.

The only remaining question is on the verdict directed for the defendants on their counter-claim. The answer set up that the plaintiff was indebted to the defendants for goods, wares and merchandise sold and delivered, etc., since a certain date, in a certain sum, and asked judgment. The reply denied that the plaintiff was indebted to the defendants for goods, wares and merchandise sold and delivered, etc., since that date, in that sum; but admitted that there was a small sum due to the defendants for goods, wares and merchandise sold and delivered, etc., the amount of which the plaintiff does not know.

It was claimed by the defendants that this was no denial. In strictness, this seems to be correct. To deny that one is indebted in the sum of one hundred dollars, without more, is not a denial that one is indebted in the sum of ninety-nine. And a denial of indebtedness, followed by an admission that there is "a small sum due," for the same cause, leaves it very uncertain what the party considers to be a small sum, especially when he avers that he does not know its amount.

But, in any such case, if the party were surprised or misled, the court would permit an amendment or grant some relief on the trial. Upon looking at the case, however, although something was said about the condition of the pleadings in respect to the counter-claim, it would seem that the plaintiff did not urge this point, or show that he was misled. The important matter, evidently, was the plaintiff's claim, and this counter-claim was secondary.

On the whole, therefore, there is no reason to disturb the course which the case took on the trial. The judgment and order appealed from should be affirmed.

*Judgment affirmed.*