Hardin, P. J.
Appellant’s position that mechanical invention is property prior to being patented, and that it belongs exclusively to the author or inventor seems to be sound.
In Gayler v. Wilder (10 How. [U. S.], 477) it was held that an assignment “which purported to convey to the assignee all the inchoate right which the assignor then possessed, as well as the legal title which he was about to obtain. was sufficient to transfer the right to the assignee, although a patent afterwards was issued to the assignor.”
In making that determination, there was an extensive discussion of the question whether “an invention is regarded as property which may be set apart for a person’s own exclusive use.” In the course of his argument in the affirmative, Mr. Webster said: “What is the reason that an invention, which is recognized as property, shall not be transferable like other property, there being nothing in the statute to prohibit it ?”
Mr. Chief Justice Taney said, in speaking of the assignment under consideration, that took effect “upon the imperfect and inchoate interest which he (the assignor) actually possessed.” The contrary opinion was maintained by three dissenting judges. The case, nevertheless, remains an authority to the appellant’s proposition, that an invention before patent is issued may be sold, assigned and transferred, inasmuch as it is regarded as property. Palmer v. De Witt, 47 N. Y., 532; Potter v. McPherson, 21 Hun, 559; Tabor v. Hoffman, 41 id., 5; Hammer v. Barnes, 26 How. Pr. Rep.. 174.
It appears by the undisputed evidence in the case, that at the time of the alleged sale, no writing was made between the parties. No payment was made at that time or at any other upon the alleged contract of sale, and no delivery of the thing sold was made at the time of the sale or at any other time thereafter, although at the time of the alleged sale the model or illustration of the invention had received some work and labor thereon by the plaintiff. Two halves ■of the iron last were furnished to the plaintiff, and he ■claims to have “devised and constructed the device in question, and arranged a socket surrounding the post in the bottom of the last, and the catch and spring for extending the two halves and holding them in position.”
After the labor bestowed upon them by the plaintiff, and the additions made thereto, they were returned to and left vzith the defendant. No letters patent were ever issued *588 upon the supposed invention to the plaintiff. Some time thereafter, ■ the defendant applied for and obtained letters patent for “a combination of the catch and spring, with jointed séctions and a post let into the bottom section by a dovétail slot,”' and received letters patent in accordance with section 4884 of the United States Revised Statutes, page 945. Upon the trial, there was a dispute between the parties as to whether or no the plaintiff was the inventor, of the defendant himself the inventor of the idea which was used in the adjustment of the catch and spring. If the plaintiff was the inventor, it would seem that the letters patent issued to the defendant would give him no legal title to the invention. See section 4886, United States Revised Statutes.
Plaintiff, in his testimony, seeks to maintain that there was an agreement on the part of the defendant to pay him $500 for the invention if he took it and used it. He testifies that the defendant said, on the occasion of the alleged verbal arrangement between them, viz. : “ If I take it, and make any use of it I will give you five hundred dollars for it,” and that at the interview he called in Mr. Owens, and said to him that plaintiff “has got an invention, and he wants $500 for it. If I take it and use it at all, I am to give him so much for it. I told him any time when he got ready for the thing to be patented, the patent would be issued and assigned to him.” (No patent was ever issued to the plaintiff. No written assignment of the invention was ever tendered to the defendant by the plaintiff )
The defendant denies that any agreement such as averred and sworn to by the plaintiff was made, but states the conversation to have been as follows, viz.: “I don’t know whether I can use this thing or not. If I am going to use it on all our lasts, I would willingly give you $500. If we use it on half, I will give you $250; if we don’t use it on any, I don’t want to give a cent for it.” Plaintiff replied, then, when I said that “that is satisfactory to me.” Then, says I: “Mr. Jones, let us have a writing to that effect, setting forth all these things, so we can have no misunderstanding. ” Plaintiff replied: 1 ‘ What do I want better than your word,” and refused to have a writing executed. The defendant’s version of the conversation was corroborated by the witness, William Owens.
The plaintiff insisted at the trial that the defendant had, by including the device in the combination for which he had obtained a patent, made “use” of the plaintiff’s invention, insisting that the procuring of the patent was such use as answered the requirement of the contract as stated by the plaintiff.
We think the plaintiff’s position cannot be sustained. *589 As before observed, the defendant acquired no title to the invention of the plaintiff from the letters patent obtained by him, if it be assumed that the plaintiff was the inventor, and not the defendant. The defendant made the application for the letters patent obtained by him with the knowledge and with the assent of the plaintiff; and in order to obtain them he was obliged to take the position, as the plaintiff well knew, that he was the inventor of the combination referred to in his specifications for letters patent.
Second. We think the strength of the evidence fairly supports a construction of the contract between the parties, which leaves the use to be made of the invention at his practical option in and about the business of the defendant. At that time the defendant had been for some nineteen years the proprietor of a large manufacturing establishment, employing 500 hands, in the city of Utica, in the .manufacture or boots and shoes, as was well known to the plaintiff, and it was in reference to his business that the treaty was had, and we think the weight of the evidence was so strong that a verdict ought not to be permitted to stand which should find that the use referred to in the conversation between the parties was other than in the business in which the defendant was engaged.
It, therefore, follows that the defendant has never made ■ any use of the invention of the plaintiff in accordance with the conversation had by the parties in respect to the same. It appears in the evidence that the defendant never made any use of the plaintiff’s invention in and about his business. That it was totally impracticable and valueless, and that it never advantaged him according to the testimony.
It has long been settled that where a valueless invention is the subject of sale, by way of defense it may be shown that the supposed invention had no value or usefulness. Saxton v. Dodge, 57 Barb., 115.
We think it was competent for the defendant to show upon this trial that he was the originator of the idea claimed by the plaintiff to have been his invention. Dickinson v. Hall, 14 Pick., 217.
It was held to be competent in defense of a promise to pay by the purchaser of a patent right that the invention was neither a new nor a useful invention. See also Head v. Stevens (19 Wend., 411).
Third. We are also of the opinion that the alleged contract was void by the statute of frauds. It was for the sale of property in a stipulated amount exceeding fifty dollars, and was not in writing. The thing contemplated by the contract was the invention. There was no such delivery and acceptance as satisfies the requirements of the statute of *590 frauds. Neither was there any part payment for the thing sold.
Plaintiff’s learned counsel calls our attention to Marsh v. Rouse (44 N. Y., 643), wherein it is decided that “ to constitute a sufficient delivery under an oral agreement for the sale of personal property to take the contract out of the statute of frauds, the property must be placed within the control and under the exclusive dominion of the buyer. ”
There was no such delivery of the invention as excluded the plaintiff from applying to the patent office for letters-patent. Therefore, if he had applied and obtained letters-patent, and an assignment had been made and recorded of any rights derived by him under the letters-patent, the assignee would have acquired title by a record of such assignment, which would have defeated any parol arrangement had between the defendant and the plaintiff. Section 4898, United States Revised Statutes.
We think receiving the model from the plaintiff and attaching a catch-spring thereto, and returning the property to the defendant, was not such, a delivery as is required to take the case out of the statute of frauds.
If the sale was made by the plaintiff to the defendant, it was of the invention, the inventor’s device, which was the principal thing or property sold. The improved model was a mere incident used or usable to illustrate the idea, the invention or the device. If the plaintiff had any proprietory interest in such idea, the invention or device as he claims to have sold to the defendant, or as his counsel calls it, “of an unpatented invention,” that was the subject matter of the alleged sale.
The foregoing views lead us to the conclusion that the learned trial judge committed no error in ordering a judgmedt of nonsuit at the circuit.
Judgment affirmed with costs.
Boardman, J., concurs in result; Follett, J., dissents with an opinion.